**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0034n.06

No. 10-2202

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

***Jan 10, 2012***

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| CARLOS JOHNSON, | ) | |
| | ) | O P I N I O N |
| Defendant-Appellant. | ) | |

BEFORE: COOK, WHITE, and DONALD, Circuit Judges.

PER CURIAM. Carlos Johnson appeals the 36-month sentence imposed upon his plea of guilty to unlawful use of a communications facility to facilitate a drug trafficking crime, in violation of 21 U.S.C. § 843(b). Johnson argues that the district court erred by holding him responsible at sentencing for 1.5 kilograms of heroin. For the following reasons, we affirm the district court's judgment.

Johnson, along with Donald James Hollin, Arthur Anderson, and Jameil Bakri, was charged in a second superseding indictment with conspiracy to possess with intent to distribute one kilogram or more of heroin and 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a) and 846. Johnson was subsequently charged in the instant case with use of a telephone to facilitate the commission of the conspiracy charged in the second superseding indictment. Johnson pleaded guilty to this offense pursuant to a written plea agreement.

The facts set forth in the presentence report (PSR) reflect that Hollin was trafficking significant amounts of cocaine and heroin. After observing Hollin enter and exit 2623 Walden Wood in Wyoming, Michigan, during a drug transaction, law enforcement officers obtained a search warrant for the home. Upon executing the search warrant, the officers found a box containing approximately 1.5 kilograms of heroin, that had been stored in a closet. Subsequent analysis revealed that both Hollin's and Johnson's fingerprints were on the heroin packaging.

Bakri, a co-defendant, told law enforcement agents that Johnson served as Hollin's "right-hand man." Johnson told agents that he lived with Hollin, that he witnessed people coming in and out of the house to buy drugs from Hollin, and that he accompanied Hollin on drug deliveries "every other day." According to Johnson, Bakri bought powder cocaine from Hollin on multiple occasions, and Anderson regularly transported powder cocaine and heroin for Hollin. Johnson also told agents that, on one occasion, he accompanied Hollin to the airport to pick up two men who he believed were Hollin's heroin suppliers. In a proffer-protected statement, Johnson admitted that he assisted Hollin in dividing and packaging heroin. In his presentence interview, Johnson stated that he helped Hollin distribute drugs, in exchange for which Hollin gave him alcohol and allowed him to live in his home and wear his clothes. Johnson denied any role in distributing the heroin in the box, stating that his fingerprints were on the packaging because he touched it when he was looking for powder cocaine, his personal drug of choice.

The PSR held Johnson accountable for 1.5 kilograms of heroin and 4.5 grams of powder cocaine, yielding a marijuana equivalent of 1,607.465 kilograms and a base offense level of 32. *See* USSG § 2D1.1(c)(4). After a three-level reduction for acceptance of responsibility, Johnson's total offense level was 29, which resulted in a guideline range of 121 to 151 months. Because the

maximum sentence authorized by statute for Johnson's offense was 48 months, however, that became the guideline sentence. *See* USSG § 5G1.1(a).

Johnson objected that he should not be held responsible for the 1.5 kilograms of heroin because he did not use, distribute, or sell it. Johnson also noted, and the government agreed, that his admission that he helped Hollin package heroin was proffer-protected and could not factor into the calculation of his sentence, and that the issue was whether the 1.5 kilograms of heroin was "reasonably foreseeable" to him. The district court overruled Johnson's objection, then sentenced Johnson to thirty-six months in prison, to be followed by three years of supervised release. Johnson now appeals.

We review sentences for reasonableness, which has both a procedural and a substantive component. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Warman*, 578 F.3d 320, 349 (6th Cir. 2009). Johnson argues that his sentence is procedurally unreasonable because the district court erred in calculating the amount of drugs attributable to him and, by extension, his guideline range. *See Warman*, 578 F.3d at 349-50. The district court's drug-quantity determination is a factual finding that we review for clear error. *See id.* at 350. "A drug quantity need only be established by a preponderance of the evidence[.]" *Id.* at 351 (citation omitted). "The district court's estimate may be based upon physical evidence (such as seized drugs) or testimonial evidence." *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008).

In a case involving joint criminal activity, a defendant's sentence is based on "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." USSG § 1B1.3(a)(1)(B). Thus, a defendant is held accountable for the conduct of others only if "(1) the conduct [is] in furtherance of the jointly undertaken criminal activity; and (2) the conduct

[is] reasonably foreseeable in connection with that criminal activity." *United States v. Campbell*, 279 F.3d 392, 399 (6th Cir. 2002). "[T]he scope of conduct for which a defendant can be held accountable under the sentencing guidelines is significantly narrower than the conduct embraced by the law of conspiracy." *United States v. Orlando*, 281 F.3d 586, 600 (6th Cir. 2002) (citation omitted); *see* USSG § 1B1.3, cmt. n.1. "Under this narrower scope, a district court may hold a defendant accountable only for that conduct which is reasonably foreseeable within the confines of the conspiracy." *United States v. Henderson*, 307 F. App'x 970, 981 (6th Cir. 2009).

The district court's factual finding was not clearly erroneous. Johnson asserts that, because he was a "go-fer" who "only acted when told to do so," and because he had not been given any instructions "with respect to this particular heroin," distribution of the heroin was not foreseeable to him and was not within the scope of the criminal activity he agreed to undertake. *See Campbell*, 279 F.3d at 400. But given Johnson's admission that he would perform whatever tasks Hollin asked of him in furtherance of his drug-trafficking activities, including making phone calls to arrange sales and going along on deliveries, the court was not obliged to accept Johnson's assertion that his fingerprints were on the heroin only because he was searching for powder cocaine, and could reasonably conclude that the scope of his jointly undertaken criminal activity was broad enough to encompass distribution of the heroin recovered from the closet.

Accordingly, we affirm the district court's judgment.